**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

ANTHONY HOVANKY, *on behalf of himself
and all individuals similarly situated*,

     Plaintiff,

 v.               Civil Action No. 3:20-cv-586

REALPAGE, INC.,

Serve: C T Corporation System, Registered Agent
    4701 Cox Road, Suite 285
    Glen Allen, VA 23060

     Defendant.

**COMPLAINT**

COMES NOW the Plaintiff, ANTHONY HOVANKY, ("Plaintiff"), individually and behalf of a class of similarly situated consumers, by counsel, and for his Complaint against the Defendant, he alleges as follows:

**PRELIMINARY STATEMENT**

1. This is an action for violation of 15 U.S.C. § 1681e(b), the Fair Credit Reporting Act ("FCRA").

2. Defendant is a "Reseller" consumer reporting agency ("CRA") generally focused on selling landlord-tenant screening reports. It buys most of its information from third-party CRAs and then determines what parts of that purchased data to include in the final reports it sells to its customers.

3. Defendant receives its detailed information from Equifax, itself a consumer reporting agency, from which Defendant built the Plaintiff's credit report. And yet, RealPage

redacted and withheld important information out of the Equifax data when it furnished a report to

the Plaintiff's prospective landlord. It also ignored objectively obvious information that showed

the information RealPage was publishing was inaccurate.

4.      More specifically, even though Equifax informed RealPage that certain of

Plaintiff's accounts and debts were no longer owing and had been fully discharged in an early

bankruptcy, RealPage chose to omit that status and instead reported multiple tradelines – and a

civil judgment – as supposedly open and still owing in default.

5.      Not only is this obviously wrong – and objectively inaccurate – but this

procedure, used for all of RealPage's reports, circumvents court-ordered procedures otherwise

followed by Equifax requiring that credit account tradelines that have been discharged be

reported as such.   Equifax was ordered to include that information in the reports it sells,

including reports sold to RealPage. Equifax did include that information, but RealPage then took

the information out before it resold the Equifax data.

## JURISDICTION

6.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681(p).

7.       Venue is proper in this District and Division because a substantial part of the

events and omissions giving rise to the claim occurred in this District and Division.

## PARTIES

8.      Plaintiff Anthony Hovanky ("Mr. Hovanky") is a natural person, resident of the

Richmond Division and is a "consumer" as defined by 15 U.S.C. § 1681a(c).

9.      Defendant RealPage, Inc. ("RealPage") is a "consumer reporting agency"

("CRA") as defined in 15 U.S.C. § 1681a(f) that regularly conducts business in the

Commonwealth of Virginia. RealPage is also a "reseller," as defined by § 1681a(u) of the FCRA,

that assembles, and merges information contained in the databases of other consumer reporting

agencies and resells the data to third parties.

10.     RealPage disburses consumer reports to third parties under contract for monetary

compensation.

## FACTS

11.     Before the enactment of the FCRA, inaccurate and misleading information was

identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec. 2411

(Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA in 1970 to ensure the

"confidentiality, accuracy, relevancy, and proper utilization" of credit reports. 15 U.S.C. §

1681(b).

12.     To accomplish Congress' goals, the FCRA contains a variety of requirements to

protect consumers, including § 1681e(b), which is one of the cornerstone provisions of the

FCRA. Whenever a consumer reporting agency prepares a consumer report, § 1681e(b) requires

the CRA to follow reasonable procedures to assure maximum possible accuracy of the

information concerning the individual about whom the report relates. 15 U.S.C. § 1681e(b).  This

section imposes a high, and often disregarded, standard on consumer reporting agencies.  *See,*

*e.g.*, *Burke v. Experian Info. Sols., Inc.*, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011)

(breaking down the requirements of § 1681e(b), and explaining that "'assure' means 'to make

sure or certain: put beyond all doubt,'" "'[m]aximum' means the 'greatest in quantity or highest

degree attainable[,]' and 'possible' means something 'falling within the bounds of what may be

done, occur or be conceived.'" (quoting *Webster's Third New International Dictionary* 133,

1396, 1771 (1993)).

13.     Defendant is aware of the failures of the duties of CRAs in reporting Chapter 7 discharged debts. While it was not a party to the action, RealPage has long been aware of litigation against the "Big 3" CRAs, including Equifax, which resulted in a nationwide injunction in 2008 against the misreporting of Chapter 7 discharged debts. *White v. Experian Info. Solutions, Inc*., et al. Case No. 8:05-cv-01070 (C.D. Cal. Aug. 19. 2008) (Doc. No. 338).

14.     Still, while Equifax largely complied with this injunction, Defendant has to date refused to apply the same standards established by this injunction to the Chapter 7 discharged debts that it reports.

15.     Defendant is a "consumer reporting agency" because it regularly and for a fee assembles and evaluates consumer information for the purpose of furnishing consumer reports to third parties.

16.     Defendant sells what is commonly referred to as a "tenant screening report" to potential landlords.

17.     Defendant blindly includes whatever information it obtains from other sources in its reports, including other CRAs, without any procedure to assure the accuracy or completeness of the underlying data.

18.     On its website, Defendant invites prospective users to "Tap into the power of our empirical scoring engine, which gives you a simple yet thorough report based on all factors— typically within seconds." Resident Screening & Rental History Software, https://www.realpage.com/apartment-marketing/resident-screening/ (last visited July 29, 2020).

19.     In a video, Defendant further explains that it has "features no other screening solution does, starting with its intelligent cost-of-risk calculator that matches pricing and deposits to the risk level of the applicant. So, for example, a marginal applicant can still rent, but might

have to pay a bit more rent, or put up a larger deposit." RealPage, *Use LeasingDesk's resident*

*screening      solution      to      conduct      background      checks      with      ease*.,

https://www.realpage.com/videos/leasingdesk-screening-solution/4603480050001/ (last visited

July 29, 2020).

20.     In August of 2018, Plaintiff applied to rent an apartment.

21.     On or around August 1, 2018, Defendant RealPage prepared a consumer report

regarding Plaintiff and furnished it to the apartment complex for a fee.

22.     The report contained grossly inaccurate information attributed to Plaintiff.

23.     In particular, the credit report prepared by RealPage disclosed at least 9 tradeline

credit accounts and one civil judgment without "discharged" statuses and related status details,

even though Defendant knew that the tradelines and the judgment had been discharged.

24.     This information was inaccurate – Plaintiff received a bankruptcy discharge in

June of 2016 from the United States Bankruptcy Court for the Eastern District of Virginia.

25.     As a result of his bankruptcy, Plaintiff received a discharge of his debt owed

pursuant to the judgment.

26.     As a result of his bankruptcy, Plaintiff received a discharge of the debts listed on

the credit account tradelines that Defendant reported with only a "Rating" of "Neg", an

inaccurate "Status" of "Open", and no mention of a bankruptcy discharge.

27.     If Defendant had reasonable procedures (or any procedures whatsoever) to assure

maximum possible accuracy, Defendant would have easily determined that the judgment was

discharged in Plaintiff's bankruptcy.

28.     If Defendant had reasonable procedures (or any procedures whatsoever) to assure maximum possible accuracy, Defendant would have easily determined that these accounts were discharged in Plaintiff's bankruptcy.

29.     Defendant should also have been alerted to the inaccuracy of its report because the public records section of Plaintiff's credit report included an entry regarding the bankruptcy, which indicated that Plaintiff received a discharge.

30.     Furthermore, Defendant should have been alerted that the judgment was discharged because Plaintiff's credit report with Equifax clearly indicates that Plaintiff filed for bankruptcy after the date that the judgment was entered, and on information and belief, Equifax reported the subject tradelines to Defendant as discharged.

31.     Defendant knowingly chose to ignore these obvious red flags in violation of § 1681e(b).

32.     As a result of Defendant's conduct, Plaintiff suffered particularized and concrete injuries, including an increased cost of housing, damage to his reputation, reductions to his credit scores, and increased risk that he would be denied housing. *In re Helmes*, 336 B.R. 105 (Bankr. E.D. Va. 2005 (explaining "a credit report entry that reflects a past due account is treated differently by prospective creditors in evaluating credit applications than an entry that reflects a debt that has been discharged in bankruptcy. The essential difference is that a discharged debt represents a historical fact, that the prospective borrower filed bankruptcy in the past and was relieved from the obligation. Nothing is now due.  A past due debt represents a delinquent but legally enforceable obligation that must be resolved.").

33.     Upon information and belief, Defendant failed to maintain reasonable procedures to assure maximum possible accuracy of the information concerning Mr. Hovanky, and, due to that failure, Defendant's "scoring engine" deemed Mr. Hovanky a "marginal applicant."

34.     Upon information and belief, after Defendant deemed Mr. Hovanky a "marginal applicant," RealPage's "intelligent cost-of-risk calculator" increased Mr. Hovanky's required deposit by adding a non-refundable "High Risk Fee" of $557.50.

35.     Upon information and belief, instead of instituting reasonable procedures that would assure maximum possible accuracy to reduce the risk of harm to Mr. Hovanky, Defendant wrongfully labels applicants as "marginal" to create an opportunity to "maximize revenue" for its users.

36.     If Defendant had reasonable procedures (or any procedures whatsoever) to assure maximum possible accuracy, Defendant would have easily determined that the amount owed on the judgment was discharged in Plaintiff's bankruptcy.

37.     If Defendant had reasonable procedures (or any procedures whatsoever) to assure maximum possible accuracy, Defendant would have easily determined that the debts listed on the credit account tradelines that Defendant reported with only a "Rating" of "Neg" and an inaccurate "Status" of "Open" were discharged in Plaintiff's bankruptcy.

38.     At all times relevant to this complaint, Defendant's conduct was willful and carried out in reckless disregard for a consumer's rights under the FCRA. By example only and without limitation, Defendant's conduct was willful because it ran a risk of harm that was known, or so obvious it should have been known, by failing to implement any procedure to identify and correct these common errors prior to furnishing reports.

39.     Moreover, Defendant failed to adopt any procedures despite the fact that at least one of its sources, Equifax, has been subject to court decisions critical of similar conduct. *White*, Case No. 8:05-cv-01070; *Acosta*, 243 F.R.D. 377, n.3 (C.D. Cal. 2007); *see also* Federal Trade Comm., 40 Years of Experience with the Fair Credit Reporting Act, an FTC Staff Report with Summary of Interpretations, July 2011, at 67 ("However, when a CRA learns or should reasonably be aware of errors in its reports that may indicate systematic problems (by virtue of information from consumers, report users, from periodic review of its reporting system, or otherwise), it must review its procedures for assuring accuracy and take any necessary steps to avoid future problems. Similarly, it should establish procedures to avoid reporting information from its furnishers that appears implausible or inconsistent.").

## COUNT ONE: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681e(b), Class Claim
### Incomplete Reporting of Credit Account Tradelines

40.     Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

41.     **The 1681e(b) Class**. Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this action individually and on behalf of a class initially defined as follows:

> All natural persons who (1) were the subject of a consumer report furnished by Defendant to a third party within five years before the filing of this action; (2) where the "Financial Detail" section of the consumer report indicated that the consumer had one or more credit accounts reported only with the "Rating" of "Neg" and "Status " of "Open", and (3) such account(s) had been reported to Defendant by Equifax as having been discharged in a Chapter 7 Bankruptcy.

> Excluded from the class are all persons who have signed a written release of their claim, and/or are counsel in this case, or employed by the Federal Judiciary.

42.     **Numerosity**. Upon information and belief, Plaintiff alleges that the 1681e(b) class is so numerous that joinder of the claims of all class members is impractical. The names and

addresses of the class members are identifiable through documents maintained by Defendant and the class members may be notified of the pendency of this action by publication or mailed notice.

43.     **Existence and Predominance of Common Questions of Law and Fact**. Common questions of law and fact exist as to all putative class members. These questions predominate over the questions affecting only individual members. These common legal and factual questions include, among other things: (a) whether Defendant had reasonable procedures to assure that it did not erroneously list one or more discharged debts as "Open" and/or due and owing and/or past due; (b) whether this conduct constituted a violation of the FCRA; and (c) whether the violation was negligent, reckless, knowing, or intentionally committed in conscious disregard of the rights of the Plaintiff and putative class members.

44.     **Typicality**. Plaintiff's claims are typical of the claims of each putative class member and all are based on the same facts and legal theories. Plaintiff, as every putative class member, alleges a violation of the same FCRA provision, 15 U.S.C. § 1681e(b). This claim challenges the credit reporting procedures of Defendant and does not depend on any individualized facts. For purposes of class certification, Plaintiff seeks only statutory and punitive damages. The recovery of class statutory and punitive damages is ideal and appropriate in circumstances like this one, where injuries are particularized and concrete, but difficult to quantify. In addition, Plaintiff is entitled to the relief under the same causes of action as the other members of the class.

45.     **Adequacy**. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling actions involving unlawful practices against consumers and class actions. Neither Plaintiff nor his counsel have any interests that

might cause them not to vigorously pursue this action. Plaintiff is aware of his responsibilities to the putative class and has accepted those responsibilities.

46.     Certification of the class and subclass under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

    a.  As alleged above, the questions of law or fact common to the members of the class and subclass predominate over any questions affecting an individual member. Each of the common facts and legal questions in the case overwhelm the more modest individual issues. Given the complex and extensive litigation necessitated by Defendant's conduct, using individual prosecution to obtain the statutory and punitive damages sought by each member would prove burdensome and expensive. Further, those individual issues that do exist can be effectively streamlined and resolved in a manner that minimizes the individual complexities and differences in proof in the case.

    b.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims generally are ideal for class treatment as they involve many, if not most, consumers who are otherwise disempowered and unable to afford to bring their claims individually. Further, most consumers affected by Defendant's conduct described above are likely unaware of their rights under the law or of whom they could find to represent them in federal litigation. Individual litigation of the uniform issues in this case would be a waste of judicial resources. The issues at the core of this case are class wide and should be resolved at one time. One win for one consumer would set the law for every similarly situated consumer.

47.     Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports it furnished regarding Plaintiff and each class member by erroneously listing one or more discharged debts as due and owing and/or past due where it was apparent that the consumer had received a bankruptcy discharge.

48.     Defendant's violation of 15 U.S.C. § 1681e(b) was willful, rendering the Defendant liable pursuant to 15 U.S.C. § 1681n. In the alternative, the Defendant was negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

49.     Plaintiff and each class member are entitled to recover statutory damages, punitive damages, costs, and attorneys' fees from the Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

### COUNT TWO: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681e(b), Individual Claim
### Incomplete Reporting of Civil Judgment

50.     Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

51.     Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports it furnished regarding Plaintiff by erroneously listing a civil judgment as due and owing and/or past due where it was apparent that the consumer had received a bankruptcy discharge which included the judgment.

52.     Defendant's violation of 15 U.S.C. § 1681e(b) was willful, rendering the Defendant liable pursuant to 15 U.S.C. § 1681n. In the alternative, the Defendant was negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

53.     Plaintiff is entitled to recover actual, statutory , and punitive damages, as well as

costs and attorneys' fees from the Defendant in an amount to be determined by the Court

pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Plaintiff asks for judgment against the Defendant, for class certification

as pleaded, for statutory and punitive damages for himself and each member of the § 1681e(b)

Class for Count One, for actual, and punitive damages pursuant to Count Two; for equitable and

injunctive relief; and for attorneys' fees and costs and such other specific or general relief the

Court does find just and appropriate.

**TRIAL BY JURY IS DEMANDED**.

Respectfully submitted,

**ANTHONY HOVANKY**
By:

/s/ Emily Connor Kennedy
Emily Connor Kennedy, VSB# 83889
Mark C. Leffler, VSB# 40712
Stephen F. Relyea, VSB# 77236
Boleman Law Firm, P.C.
2104 W. Laburnum Ave, Suite 201
Richmond, VA 23227
(804) 358-9900 – Telephone
(804) 358-8704 – Facsimile
Email: eckennedy@bolemanlaw.com
Email: mcleffler@bolemanlaw.com
Email: sfrelyea@bolemanlaw.com

Leonard A. Bennett, VSB# 37523
Craig C. Marchiando, VSB# 89736
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email:  lenbennett@clalegal.com
Email: craig@clalegal.com

*Counsel for Plaintiff*